### George W. Saul v. William R. Busenbark.

1. MASTER AND SERVANT—*Services of Servant Benefiting a Third Party.*—The services rendered by an employe to his employer, because they result in benefit to a third party, can not create a legal liability on the part of such third party to the employe, even when the third party is one of the common employers.

Assumpsit.—Error to the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed. Opinion filed February 13, 1903.

MORRIS ST. P. THOMAS, attorney for plaintiff in error.

JAMES F. MEAGHER and RALPH M. SHAW, attorneys for defendant in error.

OPINION PER CURIAM.

This case has been remanded to this court with directions to affirm the judgment of the Circuit Court if we find the facts as they were found by the latter upon the trial. If,

Saul v. Busenbark.

however, we differ from the finding of the Circuit Court and hold that no recovery can be had on the evidence, it is our duty to make a finding of the facts in accordance with which we reverse and remand, accordingly as we may deem proper.

The facts and the nature of the controversy are fully stated in the former opinions of this and the Supreme Court. In the former opinion of this court (Saul v. Busenbark, 83 Ill. App. 256), it was held as it was by the Circuit Court, and has now been held by the Supreme Court (Busenbark v. Saul, 184 Ill. 343, 346), to quote the language of the latter, to be " clear, beyond serious controversy, not only that the plaintiff failed to establish an express contract, but that there is no evidence in this regard fairly tending to prove it." The judgment of the Circuit Court was rendered upon the theory that defendant in error was entitled to recover for services claimed to have been rendered upon an implied contract, the measure being the reasonable value of the service rendered. It was our opinion upon the former hearing that there was no evidence which fairly tended to establish Busenbark's claim to recover upon such an implied contract. (83 Ill. App., 256.) The Supreme Court has reached a different conclusion in this respect, considering that there is evidence introduced in behalf of the plaintiff (defendant in error) which standing alone without reference to the contradictory testimony of defendant and his witnesses, tends " to prove a liability under the law on the theory of an implied contract." (184 Ill. 347.) With evidence in the record so tending, it becomes the duty of this court, if upon the whole evidence we find defendant (plaintiff in error) not liable on an implied contract, and the plaintiff not therefore entitled to recover the value of the services he claimed to have rendered thereunder, either to remand the cause for another trial, or to reverse and recite the facts as we find them.

The question is, as the Supreme Court says, " essentially one of fact," and the duty of settling the facts devolves upon this court. We said in our former opinion that " no implied

contract is proven." The case is now before us upon the same record as before. It was then very carefully considered, and we were of opinion from the whole evidence (83 Ill. App. 259) that "whatever advantage accrued to Saul from the trip to Holland appears to have resulted from the efforts of the combination, and it is clear that Busenbark is not legally entitled to compensation from Saul because of his work while in the employ of the combination. The benefit received from the European negotiations may have been the direct result of the formation and operations of the pool, but we know of no legal ground for holding that the services rendered by an employe to his employers, because they result in benefit to a third party, can create a legal liability on the part of such third party to the employe, even when, as in this case, the third party was one of the common employers."

There is in the record no satisfactory proof that the sale of stock finally consummated by Saul was brought about or hastened by Busenbark's visit to Holland in the interest of the combination, nor that the enhanced price was due to Busenbark's efforts. Although, as we said in the former opinion, it "seems highly probable," yet the evidence certainly fails to establish it as a fact, and we therefore said : "Whether this sale was owing to Busenbark or not, the evidence does not clearly show." To entitle appellee to recover on the theory of an implied contract for services in promoting this sale from Saul to Brice at an enhanced price for the stock, it is primarily important to prove that services were rendered which did have an influence in bringing about that sale.

It is urged, however, there is evidence tending to show that after Busenbark's return to this country, Saul recognized that he had been benefited by the services of Busenbark, and promised "to settle" with him. A promise to "settle" is not necessarily a promise to pay any definite sum or for any definite service. It amounts only to a promise to try to come to an agreement upon any matter of difference, and doubtless implies that if any specific

amount is found due from one to another or can be agreed upon, such amount shall be paid.. The testimony of defendant in error tends to show that when the parties afterward met at Chicago, the alleged promise then made was not even to " settle." Busenbark testifies : " I spoke to him about a settlement, and he said ' I will have to see my attorneys, and it will be necessary to go to New York first, and I will meet you there next week.' " The promise then was to meet appellee in New York after seeing his attorneys. The testimony of Busenbark that at the interview in New York after the latter's return from Holland, Saul promised to meet him in Chicago and " settle the matter" with him, is denied by Saul and by one Poston, a third party present at the interview, and in the face of such preponderating testimony can not be said to be so established as to justify a judgment in favor of defendant in error.

It would serve no useful purpose to again review at length the matters considered in the former hearing. We have again examined with care the evidence and the elaborate arguments filed upon both sides. We are unable to reach a different conclusion taking into consideration all the testimony and circumstances in evidence, other than that expressed in our former opinion. With the question of moral obligation we have nothing to do. That equitably Saul might reasonably compensate Busenbark to some extent is very possible. We are concerned only with the question of legal liability, and under the evidence in this record we are of opinion that none exists. The judgment of the Circuit Court must therefore be reversed, with a finding of the facts.